As you can see, Judge Garth is appearing with us by video conference, and we did this yesterday and it seemed to work fairly decently, and so if there's any problems, we'll know immediately. Judge Garth, can you hear me? I can hear you, Judge Amber. Good morning. Good morning. Good morning. We have three cases for oral argument today, and the first is number 07-2495, Stroll v. Grace et al., Mr. Schor, and Mr. Morganelli. Good morning. May it please the Court, I am Damian Schor on behalf of Joseph Stroll. I'd like to save two minutes for rebuttal. Granted. The courts identified two issues to be argued today, a Fifth Amendment due process issue and a Brady violation issue. In the 13 minutes I have, which of the two issues do you want me to address? Why don't you start with Brady? Because it seems like that's the, in one sense, the easier. Well, not from my perspective. Brady's tough from my perspective because it deals with the failure to turn over or the failure of the prosecution to obtain two medical reports from a hospital. But the prosecution never had it in his possession, did it? That's right. Now, this Court has held in the Perdomo case that not having it is not enough. If they could have gone to get it, then that's sufficient. Well, but the petitioner could have gone to get it, too. That's true. However, the petitioner, at this point, it's not about the petitioner. It's about what did the prosecution do or not do. But Brady is, did they not disclose information that was in their possession directly or constructively? And it was either in the possession of the Lehigh Hospital or the nursing home, was it not? Yes, yes. But not the government. Right. And that is the problem from Stroll's perspective. Arguably, it was not in the possession of the government. However, this was a case that had been in the government's sights since 1987. I don't understand. Counsel. Yes. Forgive me. I don't understand what you mean by, arguably, it was not in the possession of the government. I thought it was undisputed that the documents that Mr. Stroll wanted were not in the possession of the government. I was about to address that, Your Honor, to follow up on what I said. Thank you. Mr. Stroll was known to be the target for this homicide prosecution even before the death occurred. In 1987, when he was sentenced for the second of the two burglaries that are at question here, the district attorney's office read to the sentencing judge a letter saying, we deliberately did not charge Mr. Stroll with the first burglary because of double jeopardy issues, and we want to be able to prosecute him for a possible homicide. And the investigators asked the nursing home to keep him. And Mrs. Wonderly might pass away. Exactly. She was in a coma. There was a question as to whether she'd live. And the state troopers asked the nursing home to keep them apprised of changes in her condition. So from 1987, they were watching this case, and they should have been gathering this evidence to put together their – they would have been gathering this evidence to put together their case for a possible homicide. I mean, their whole theory, when Mrs. Wonderly died, was seven years after this beating, she died as a result of her injuries. And they have to make that claim. And what you're saying is things happened, intervening events, primarily at the nursing home, and that's what you can't get the information on. Right. Nursing home and the hospital, yes. And the nursing home destroyed their records. And the problem here was Mrs. Wonderly dies in 1994, and Stroll's not prosecuted until 1999. And I am not meaning to imply that there's anything untoward on the part of the government when they prosecuted him after that long a time. However, the delay occurred, and the records were lost. And if the intent was to prosecute Stroll upon death, then as part of the whole record-gathering and fact-gathering process, these records should have been obtained. So what I'm arguing is it really requires an extension of the Brady Rule to these outside agencies that would have been reached by law enforcement as part of their investigation. Why should we extend the Brady Rule when the government didn't have that information either? Because the whole purpose is to provide the defendant with a fair trial. And the government, with all of its resources that it has at its disposal, is the one authority that gets this information with no problem whatsoever. But at some point after 94, the person dies, the records are destroyed, the government can't create the records either. If they're lost, they're lost. That's true, but we're talking about what did those records, what could they have shown? And the defendant did show at the trial that she had a severe laceration of the ear, that she had a broken arm, that she had a broken hip. Yes. And the inferences that could be drawn from that were presented to the jury, that she didn't die of the beating, that she died of mistreatment at the nursing home. And the jury, although they didn't have all the records, they had the argument, and it was not denied that these injuries occurred, and they made the decision that it was the coma rather than later problems that caused her death. But they did not have all the information if they didn't have those medical records. But they had the information of these events. That's not enough. I mean, even the county's own medical examiner admitted, it would have been helpful if I had the entire medical record. Who knows what the result would have been? And that's the problem. We have to speculate on this. It might have been helpful, but it looked as if the counsel did a pretty good job at trial in bringing out that there were intervening events that were significant with regard to a person of this condition, and yet the jury didn't believe it. And how do we substitute ourselves for that? I'm not asking for that. This is really a question of what is the Brady violation. Is that enough to bring this verdict into doubt? What you're really saying seems as if there's an affirmative duty on behalf of the government to go out and use its subpoena power in order to get this information, and the fact that it didn't somehow should be held against it. Before an indictment could even be obtained because Mrs. Wunderle was still alive. I disagree with your characterization of my argument. In this specific case, Mr. Shurer, forgive me, but do I understand that the argument that you are making now from what you have said is that the government always has a duty to assemble every bit of information that would be helpful to the defendant, even though none of it is in its possession? Is that your argument? No. What I am saying is in this case, this is an unusual case. I thought you said the government had the obligation to get these records because they knew that they would be needed for the trial of Mr. Strohl. In this case, I'm not saying it for every case, but this is an unusual case given the age and the attention that they paid to this before her death. They knew they were going to prosecute as soon as she died. If we say in this case, then the next case the attorneys are going to say, well, you did it in the Strohl case, this obviously is the rule. It's an across-the-board rule. It's not a rule pertinent to the facts of a particular case. No, I disagree because the triggering event was going to be the death, and they knew that all along. They knew that seven years before she died, that as soon as she died, they were going to prosecute Strohl for homicide. That is rare. I would suggest that's very rare for the Commonwealth to know in advance what the crime is going to be. This is a very unusual situation. I think I understand your argument. Don't you think you'd better get on to the due process argument? Yes. Unfortunately, I had filed a motion with my brief for this argument to be heard en banc because basically what I'm arguing is that this Court overruled its own precedent, which you wrote, Judge Garth, which is the Ismaili case. My position is, and I believe it's supported by the precedent, is that what you've done in Ismaili is created a hard, fast, two-step, two-requirement test that cannot be met. Specifically, you're requiring that you have to show an improper motive on the part of the government to delay prosecution, and that is not part of the Supreme Court precedent. It's not said in Marion. It's not said in Lovasco. Now, the language in Marion is instructive. It starts out, and this is on page 324, 404 U.S. 324. It starts out, Thus the government concedes that the due process clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial, that the pre-indictment delay in this case caused substantial prejudice to appellee's right to a fair trial, and that the delay was an intentional device to gain tactical advantage over the accused. All they're doing there is citing a statement made by the government in its brief in that case, but Marion goes on to say that you need to have a delicate balance, a delicate judgment based on the circumstances of each case. It does not say that you must establish an improper motive on the part of the government, and to further on that, Marion was written by Justice White in 1971, and in 1988, Justice White said on this specific issue in WHO, that's HOO versus United States, 484 U.S. 1035. The issue presented by this petition for certiorari is what is the correct test for determining if prosecutorial pre-indictment delay amounts to a violation of the due process clause of the Fifth Amendment,  he talks about how the Second Circuit has held that there's no due process violation because petitioner quote, made no showing of an improper prosecutorial motive. And that was, he cites the, that was, that's the Second Circuit case, which is I believe HOO, and he cites Ismaili, Lebron Gonzalez from the First Circuit, Caporell from the Eleventh, and Jenkins from the Tenth, all for citing that, taking that posture. And then he cites two more circuits, however, that have gone the other direction, it says intentional misconduct is not the sine qua non for a due process violation. Instead, the proper inquiry is to balance the prejudice to the defendant against the government's justification for delay. He cites Valentine from the Ninth Circuit and automated medical laboratories from the Fourth Circuit. And then he even goes on to cite how in other circuits, specifically the Fifth and the Seventh Circuits, there's a split within the circuit itself. And he finishes it by saying, this continuing conflict among the circuits on this important question of constitutional law requires resolution by this court. Now that was a dissent from the denial of a petition for writ of certiorari. But if the author of Marion says, we don't have a test for prosecutorial delay, 18 years after Marion is written, I'm suggesting to you that that second requirement, having to show an improper motive is an improper imposition on the defendant. But at this point, that is the law of the circuit, is it not? Yes, and that's why I asked for it for en banc argument first time around. Is it a relevant factor whether or not there's a statute of limitations for the offense in question? It is a factor to be considered, but the statute of limitations. There is no statute. There is no statute, but you still have to consider. Is that not an indication of the government's interest in prosecuting homicide offenses at any time, even though there is, in some cases, a risk over the passage of time that evidence will have been lost because of the serious level of that offense? Absolutely. However, that has to be balanced against the defendant's right to a fair trial. That's the Fifth Amendment. And if evidence is lost that the defendant could have used, it doesn't matter what the statute of limitations is. Well, where would you have us draw the line? I would suggest that you establish the balancing test that Marion discusses, where you have to actually weigh what's lost and the impact it has on the case. And the case law that takes that approach, often they say, well, we've done the balancing test, and the defendant still loses. But the thing is, that is the way this, Marion, should be applied. And I'm out of time. Thank you. Thank you very much. We'll hear from Mr. Morganelli. May it please the Court. My name is John Morganelli, District Attorney for Northampton County. I'm here on behalf of Appellees in this matter. In order to address the issues, I'll try to keep the same order that the Court asked Mr. Schwartz to address the issues. So I'll start with the Brady, if that's all right with the Court. That's fine. With respect to the Brady issue, I do believe that this is really the easiest issue for the Court to resolve, because, quite frankly, I don't understand at all how we even get to this review. The magistrate judge wrote a thorough opinion analyzing the Brady issue and indicates, which I believe is the crux of the argument, that under the standard of review that this Court has to Was there any communication between Lehigh Hospital, which I understand is a private hospital, is that correct? Yes. Was there any communication between Lehigh Hospital and the law enforcement concerning Mrs. Wonderley? Not that I'm aware of. Again, just to give you a time frame, Judge, this case started in 1986. I was not the District Attorney at that time. A previous DA and previous staff was involved in this case when Mr. Stroll entered a guilty plea, I might add, to burglarizing the Wonderley home on the second occasion. He pled guilty. The DA at that time, from what we can gather from the records, purposely left the first burglary as not part of that plea to avoid double jeopardy in the event that this woman died down the road. So he pled guilty, admitting that he had burglarized her home on the second day of the events of December of 1986. Did the government ever have possession of any of these? No. I think the record is clear. It's conceded by the appellant that these records, and by the way, I don't even know exactly what they're talking about. If you look at the brief of the appellant in this case, on page 24, he states, the medical records that Stroll did obtain, well, they're talking about two reports that they didn't get. I don't know if those reports have even ever been identified as to what they're talking about. I'm not even sure what they mean by two reports. There's no question that they had possession of substantial medical records of Mrs. Wonderley that were available, that were supplied, and led to their defense at trial, which was the causation issue, that the injuries, you know, that she didn't die from the injuries back in 1986 and there were intervening injuries. That was their defense. I might add that Stroll had already been on record as admitting to being in that home on the second day, burglarizing the place, and the guilty plea was an admission and relevant evidence that came also to the jury's attention. So the main defense was, Judge, the causation that the death was not caused by what was occurred. Why don't you go to the due process argument then? All right. She dies in 94. Why the, I guess this, for three years nothing happened, and they were sort of reviewing as a matter of process old homicide, possible homicide cases, and came upon this one. Is that correct? That's correct. In 1999, and I was in office at that time, our office undertook a review of all outstanding homicide cases in the county and inventoried them and then put together a grand jury to look at them. The Stroll case was one of the cases that came to the grand jury, and there were a lot of loose ends and lots of investigation that had to be done on this because back in 86 and 87, when this case was before the trial court, witnesses were uncooperative. Now, years later, a lot of these witnesses who were very young at the time when Stroll committed this crime were older. When they were contacted and brought before the grand jury, they began to give new information about the events of 86 and which was very important information and, quite frankly, was likely that they would not be able to establish a murder case without this information. It wasn't until the grand jury completed its work that there was enough evidence to charge and convict this defendant on the charge of homicide. Prior to that, the Commonwealth would not have had a case to proceed because we were not able to establish the first entry into that home. Stroll had pled guilty to the second entry, but the facts of the case appeared to be that this woman had been beaten. There had been two entries in that home. So the due process claim, I think, is not sustainable. Mr. Shor has said that we have misread Marion and perhaps, I guess, Lovasco as well, but what is your comment to that? I don't think it's misread. I think that there's two points to that. Is there an improper prosecutorial motive that's necessary in order to find a due process violation? I believe there is. I think it is a two-part test. I think Ismaili is on point. I think there has to be substantial prejudice as well as an intentional delay to gain some tactical advantage. I don't think there's any evidence of the latter and, quite frankly, even if this Court wants to rewrite the law of the Third Circuit, which I don't think it wants to, because the Third Circuit controls. I noticed that there are cites to other circuit courts as to what the law should be, but the Third Circuit is on point. The law here in this circuit is clear. There isn't even any substantial prejudice on this issue because of the fact that they have not identified anything except perhaps these two reports, which, again, I'm not even sure what those reports are, that would have changed the outcome or the nature of the defense that was presented. The defense in this case could only have been, in light of Stroll's guilty plea to the burglary, admitting he's in that house, to the fact that whatever happened to her, you know, it wasn't me and also there's no causation here. You know, if you apply the standards of the Anti-Terrorism Effective Death Penalty Act standard of review that this Court has to impose, there is no misapplication of federal law and there's no unreasonable determination of the facts that would allow the Court to intervene in this State proceeding and reverse this case. How does it fit into this from your standpoint? I'm sorry, Judge, I can't hear you. How does it fit into this from your standpoint? How does it fit in? I believe that the standard of review is, as we all know, what the case law is on that. That's cited in my brief and that the statute is very clear that in order for the court to, the federal courts to intervene in the State determination, there has to be some establishment that there was an unreasonable application of clearly established federal law or that the decision was an unreasonable determination of the facts in light of the evidence and I don't see either prong of that being met here by this appellant. Well, Mr. Morganelli, the reason I asked you that question is that your friend, Mr. Schor, has just asked us to change Third Circuit law. If the Third Circuit law at the time that the Pennsylvania Court interpreted it was consistent with the interpretation of Pennsylvania, what would we do so far as EDCA is concerned? Because we hadn't overturned, we hadn't accepted his invitation as yet to overturn any of our precedents. Well, I think that it presents somewhat of a dilemma, but I think you can also fall back on the fact that the federal law as established by the U.S. Supreme Court is the standard and I think that the Third Circuit's ruling is in line with the U.S. Supreme Court's current status of the law on Brady and also on the due process for the delay in the prosecution issue. So I think that you could fall back on that, that the U.S. Supreme Court standard is what really the standard is, but the Third Circuit current status is in line with that and I guess I just don't see why the Third Circuit would change the law when it is consistent with the U.S. Supreme Court standard of review on these issues. Ken, in determining whether there was a misapplication of Supreme Court law, Ken, is it relevant to consider that the state court considered a circuit court interpretation of Supreme Court law that arguably is inconsistent in some respect? I think that could be, Judge. I think that that is a possibility if this court would find that the, I think implicit in that would be a finding that the third court decision in Ismaili was not in line with the U.S. Supreme Court law. I think it is. But if the Pennsylvania court followed Ismaili in interpreting Marion, is that an unreasonable application of Supreme Court law? I don't think so, as long as the Ismaili decision is consistent with and in line with the Supreme Court. If it is inconsistent, it may be an issue. But as I read Ismaili and Marion, and I read them prior to coming here, I don't believe that we have an inconsistent standard here. So you're saying if we find that, my apologies, Judge Garth, if we should find that Ismaili is inconsistent with Marion, then it would be an inappropriate consideration of Supreme Court law for the Pennsylvania court to be influenced by Ismaili in interpreting Marion. It possibly could be. Exactly. Thank you. Thank you. Mr. Schor. I want to make two quick points. First, you asked Mr. Morganelli if you have to show improper prosecutorial motive under Marion. And he said yes. If you take this approach, which is what this court has taken, then anybody who comes to this court with a due process argument based on a delay of prosecution loses. All the district attorney has to say is I had no improper basis for delaying prosecution. Well, we aren't necessarily going to believe the district attorney. Well, you're stuck with a cold record when they come up here. Now, in this case, what is noteworthy is Mr. Morganelli came into office in 1992. Mrs. Wonderly died in 1994. To his credit, Mr. Morganelli sent out letters to all the law enforcement agencies in his jurisdiction saying I want to clear up old homicides. It took two tries to get Mrs. Wonderly's name to come up. That's in the record. It starts around page 1331. Even the law enforcement body that was investigating this crime put it on the shelf. There was no ongoing investigation, which Lovasco says is a permissible reason for delay. But there was no ongoing investigation here. And the fact that they took a grand jury to get people to talk should not be considered. So cold cases shouldn't be prosecuted? No. What I'm saying is you have to look at the cold the that in this case, the fact that it was a cold case that was just sat there is a factor to consider. It was not an ongoing investigation, so you can't use the Lovasco rule to justify the delay in prosecution. And the I lost my train of thought here. The other issue is as far as the grand jury is concerned, in the record the county had not had a grand jury since 1970. Well, if that's what it took to get the witnesses to talk, that's not something that can be justified. That's a delay on the part of the county. If that's what it took, they should have called a grand jury in 1994 if the police and a district attorney were still thinking about Mrs. Wonderly. Thank you. Thank you. Thank you to both councils for well-presented arguments. We'll take the matter under advisement and call the next case.